IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ROBERT F. ERBACHER,<br><br>            Plaintiff,<br><br>    v.<br><br>STAN L. ALBRECHT, RAYMOND T. COWARD, MARY S. HUBBARD, DONALD H. COOLEY, ROBERT BARCLAY, RICHARD JENSON, NANCY MESNER, DAVID PEAK, DALE WAGNER, RALPH WHITESIDES, individually and in their official capacities, UTAH STATE UNIVERSITY.<br><br>            Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 1:11-cv-00096-RJS<br><br><br><br>Judge Robert J. Shelby |

Utah State University denied Dr. Robert F. Erbacher tenure after he worked for six years under a pre-probationary contract as a computer science professor. Denial was based on a multi-level review process of Dr. Erbacher that occurred throughout the six-year period. Dr. Erbacher now brings suit under 42 U.S.C. § 1983, alleging that the tenure review process and denial of tenure violated his Due Process rights under the Fourteenth Amendment. The Defendants, Utah State University and various university officials, move to dismiss Dr. Erbacher's Complaint. Because a property interest in tenure arises only after tenure is granted,

Dr. Erbacher's due process claims under 42 U.S.C. § 1983 must be dismissed. The court declines to exercise its discretion to reach Dr. Erbacher's pendant state law contract claims. These claims are dismissed for lack of jurisdiction.

## I. Factual Background

Dr. Erbacher taught as a non-tenured assistant faculty member in the computer science department at Utah State University from April 2003 to April 2009. During this period a pre-tenure probationary contract governed Dr. Erbacher's employment. Under the contract Dr. Erbacher was eligible for tenure review at the conclusion of the six-year probationary period. During the seventh year of teaching, depending on Utah State University's tenure determination, Dr. Erbacher would either be employed in a terminal contract for one year or commence working under tenure status.

Utah State University evaluated Dr. Erbacher's tenure eligibility through a complex, multi-tiered review process. Throughout the six-year probationary period Dr. Erbacher worked with a Tenure Advisory Committee. This committee gave Dr. Erbacher feedback on his progress towards tenure and provided annual evaluations for the first five years of the contractual period. During the fourth pre-probationary year the Tenure Advisory Committee raised concerns regarding the level of organization of Dr. Erbacher's tenure file and his ability to secure research funding. In the fifth pre-probationary year the Tenure Advisory Committee commended Dr. Erbacher for increasing his funding and improving the level of organization in his tenure file. Overall, student evaluations for Dr. Erbacher for this period reflected a positive trendline somewhat below the department norm but that Dr. Erbacher was well-liked by his graduate students.

Utah State University Policy 405.7 directs department heads to solicit review letters from a tenure candidates' academic peers during the final probationary year. These external reviewers provide an evaluation for the tenure review committee to take into consideration in making its decision. The review letters are external to the University and under Policy 405.7 at least half of the external reviewers must come from a list submitted by the candidate. A cover letter and summary of pertinent information must accompany the candidate's file sent to external reviewers, and the form of these documents must be agreed upon by the candidate. Dr. Erbacher submitted seven potential external reviewers to the Tenure Advisory Committee but the Committee selected only three external reviewers from Dr. Erbacher's list. Later, the Committee asked Dr. Erbacher for a second list, with the explanation that sometimes external reviewers decline to submit a review and sometimes the Committee chooses not to select a particular external reviewer.

After his six-year probationary teaching period ended, the Tenure Advisory Committee evaluated Dr. Erbacher on a number of metrics, including evidence of excellence in research and evidence of effectiveness in teaching and service. The Tenure Advisory Committee ultimately determined that, while satisfying the relevant standards in many areas, Dr. Erbacher failed to meet the standard of excellence in securing funding. The Tenure Advisory Committee voted against granting Dr. Erbacher tenure. The head of the computer science department, the dean, and a central review committee all concurred with this result, and recommended that Dr. Erbacher not be awarded tenure. After reviewing these recommendations, the University president denied Dr. Erbacher tenure on April 10, 2009. Dr. Erbacher timely filed a notice of intent to grieve, triggering a review hearing.

Dr. Erbacher represented himself at the December 2009 grievance hearing, though his counsel was in attendance. Robert Barclay, an attorney from the Utah Attorney General's office, advised the grievance hearing committee and the University administration during the hearing. Among other things, he produced a legal memorandum that guided the grievance hearing committee. Barclay distributed this memorandum to Provost Raymond Coward, representing the University at the hearing, as well as to the individual members of the grievance hearing committee. Barclay did not provide a copy of this memorandum to Dr. Erbacher or his counsel. Dr. Erbacher objected to the use of the memorandum and was provided a copy to follow along with while the grievance hearing committee chair quoted from the memorandum. After the hearing Dr. Erbacher returned the copy of the memorandum. Neither Dr. Erbacher nor his counsel were provided with a copy of the memorandum for their files.

The grievance hearing committee found that the University had violated Utah State University Policy 405.7 by not allowing Dr. Erbacher to agree to the content of the solicitation letter sent to external reviewers. Despite this violation, the grievance hearing committee upheld the denial of tenure. After affirmation of the tenure denial, Dr. Erbacher requested a rehearing. The grievance hearing committee denied his request.

Dr. Erbacher then filed this lawsuit alleging constitutional violations and contractual breaches. Dr. Erbacher alleges two general deficiencies with the grievance process. First, Dr. Erbacher alleges that Utah State University violated its own Policy 405.7 when it did not allow him to approve final drafts of the solicitation letters sent out to external tenure reviewers and failed to solicit at least four of his seven proposed external reviewers. According to Dr. Erbacher, the selection of these external reviewers constitutes an integral part of the tenure

review process, and could be highly determinative of the ultimate conclusion whether to grant tenure to an assistant professor.

Second, Dr. Erbacher alleges a conflict of interest relating to the grievance hearing. Both the University Administration representative defending the tenure denial decision and the grievance hearing committee members reviewing the tenure denial decision had copies of Barclay's legal memorandum during the hearing. Neither Dr. Erbacher nor his counsel were permitted to retain copies of Barclay's legal memorandum. In effect, Dr. Erbacher alleges that Barclay acted both as "prosecution" and as a "judge" by advising both the grievance hearing committee and the University Administration during the grievance hearing.

Dr. Erbacher asserts that these violations of the university tenure review policy and legal ethics give rise to claims of denial of due process under 42 U.S.C. § 1983, and breach of contract and breach of the implied covenant of good faith and fair dealing under Utah contract law. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Dr. Erbacher's claims. Defendants also assert qualified immunity. Dr. Erbacher has filed a motion for leave to amend his Complaint, or in the alternative, for discovery. Also before the court are motions relating to the pleadings. Dr. Erbacher has filed additional motions to amend. Defendants have filed motions to strike various submissions.

For the reasons stated below, the court grants Defendants' motion to dismiss Dr. Erbacher's two causes of action under 42 U.S.C. § 1983. The court finds that amendment would be futile in light of incurable constitutional defects. Having dismissed the two federal causes of action without leave to amend, the court finds it lacks jurisdiction to entertain the pendant state

law contract claims. Consequently, these claims are also dismissed. All claims being dismissed, the remaining motions are moot.

## II. Qualified Immunity

Defendants move to dismiss Dr. Erbacher's claims for damages under 42 U.S.C. § 1983 on the basis of qualified immunity. "Qualified immunity generally shields from liability for civil damages government officials performing discretionary functions ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotations and citations omitted). Qualified immunity "seeks to balance the protection of constitutional rights and the 'substantial social costs' of imposing liability on public officials." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Qualified immunity provides government officials broad protections, giving them "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The Tenth Circuit employs a three-part test for qualified immunity. The court first examines "whether the plaintiffs' allegations, if true, establish a constitutional violation." *Gomes*, 451 F.3d at 1134. "If the allegations do not meet that standard, [the court] must dismiss the claim." *Id.* If a plaintiff survives the first inquiry, the court examines "whether the law was clearly established at the time the alleged violations occurred." *Id.* For the law to be "clearly established" does not require a prior case with exactly the same fact pattern but rather requires that the contours of the constitutional right "be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

(quotations omitted).  If the law is clearly established then the court asks "whether, in spite of the fact that the law was clearly established, extraordinary circumstances such as reliance on the advice of counsel or on a statute so prevented the official from knowing that [their] actions were unconstitutional that [they] should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d at 1134.

Dr. Erbacher's allegations fail to satisfy the first prong of the qualified immunity analysis.  Taken as true for purposes of this motion the allegations nevertheless are deficient as a matter of law to establish a constitutional violation under 42 U.S.C. § 1983.  Due process claims attach to liberty or property interests protected under the Fourteenth Amendment.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Ripley v. Wyoming Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009).  The keystone of Dr. Erbacher's due process claim is a property interest in tenure protected by the Fourteenth Amendment.  But it is well-established law that an assistant professor has no property interest in tenure before being granted tenured status.  *Roth*, 408 U.S. at 578 ("[T]he respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.").  Importantly, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Ripley*, 559 F.3d at 1122 (examining a claim of a property interest in medical center staff membership status).

Dr. Erbacher does not plead facts that establish a legitimate claim of entitlement to tenure or even a unilateral expectation of it. He points to University Policy 405.2.2 providing that tenure is "awarded on the basis by which a faculty member performs his or her role assignment," and argues that a protected property interest arises solely from the contract between Utah State University and himself. Dr. Erbacher also cites to *Perry v. Sinderman*, 408 U.S. 593 (1972), decided on the same day as *Roth*, for evidence that he has a constitutionally-protected property interest in tenure here. While reaching the opposite outcome from *Roth*, *Perry* nevertheless buttressed the general principle that expectations of tenure, without more, do not constitute a property interest: "As in *Roth*, the mere showing that he was not rehired in one particular job, without more, did not amount to a showing of a loss of liberty . . . . [or] property." *Perry*, 408 U.S. at 599. The "more" in *Perry* was the teacher's allegation "that the college had a de facto tenure program, and that he had tenure under that program." *Id.* at 600. Dr. Erbacher does not allege that Utah State University had a de facto tenure program. Utah State University instead retained discretion to make tenure decisions, including denials. And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 754 (2005). Dr. Erbacher's claim that he has a protected property interest in tenure before it is granted to him fails as a matter of law, incurably frustrating his due process claim under 42 U.S.C. § 1983.

Dr. Erbacher also alleges that he has a property interest in the tenure review process itself. But "an entitlement to nothing but procedure cannot serve as the basis for a property right protected by the Due Process Clause." *Ripley*, 559 F.3d at 1125 (quoting *Town of Castle Rock*, 545 U.S. at 764). Dr. Erbacher points again to the fact that the State of Utah entered into a

contract with him setting out a process for obtaining tenure. But this process rests with the sole discretion of university officials and promises no more than a fair review. This contract, by itself, does not create a property right. If it did, any contract by any state government entity would create a property right that would give rise to due process claims. This would unworkably expand the scope of Fourteenth Amendment Due Process. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies . . . . [t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 349–350 (1976). If Dr. Erbacher's allegations established a constitutional violation it would "take us beyond *Roth* or any other recognized theory of Fourteenth Amendment due process, by collapsing the distinction between property protected and the process that protects it." *Gonzales*, 545 U.S. at 772. Dr. Erbacher's process-based allegations fail to establish a constitutional violation. This court can find no property interest in tenure nor pre-tenure review procedures here and will not create one by collapsing the distinction between property and the process that protects it.

     Dr. Erbacher also fails on the second prong of the qualified immunity analysis. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. The court's answer to the first prong of the *Gomes* analysis compels the conclusion that the individual defendants were not on notice that their discretionary actions implicated Dr. Erbacher's constitutional rights. More fatally, the case law seems to put the individual

defendants on notice of the opposite: that Dr. Erbacher did not have a constitutionally-protected property interest in tenure before Utah State University granted him that tenure.

Dr. Erbacher's claims for *damages* under 42 U.S.C. § 1983 fail on the qualified immunity analysis and must be dismissed.

### III. Motion to Dismiss

The qualified immunity analysis likely requires dismissal of Dr. Erbacher's civil rights claims in their entirety, but the court does not need to reach that question because Dr. Erbacher's claims also must be dismissed for failure to state a claim upon which relief can be granted. Defendants move to dismiss Dr. Erbacher's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1334 (2007); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995). *See also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations *without supporting factual averments* are insufficient to state a claim on which relief can be based") (emphasis added). The court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, *Tal*, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, *quoted in Ridge at Red Hawk,*

*LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Stating a claim under Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Even taking the facts alleged in the First Amended Complaint as true, and viewing these facts in the light most favorable to Dr. Erbacher, the Complaint fails. Dr. Erbacher's Complaint is not plausible on its face because neither the state entity defendants nor the individual defendants acting in their official capacities are "persons" subject to suit under 42 U.S.C. §1983. More fundamentally, Dr. Erbacher alleges a due process violation without first identifying a constitutionally-protected property interest, as noted above. Moreover, amendment is futile here. Adding a prayer for injunctive relief to bring the individual defendants within the scope of liability under 42 U.S.C. § 1983 still does not cure the lack of a protected property interest.

A.   **Definition of "Person" Under 42 U.S.C. § 1983**

Even if Dr. Erbacher's claims could survive qualified immunity they are legal deficient on other grounds. Most importantly, Dr. Erbacher does not allege claims against any defendant who is a "person" within the meaning of 42 U.S.C. § 1983. "The State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." *Howlett v. Rose*, 496 U.S. 356, 365 (1990). "[I]n suits for damages, neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Ross v. The Bd. of Regents of The Univ. of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010) (internal citations and quotations omitted).

Dr. Erbacher alleges claims against an entity-defendant, Utah State University. Utah State University is an arm of the state. *Accord Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996) (arms of the state are "entities created by state governments that operate as alter egos or instrumentalities of the states"); Utah Code Ann. § 63-30-2(9) ("'State' means the state of Utah, and includes any . . . university, or other instrumentalities of the state.") As an arm of the state Utah State University is not subject to liability under 42 U.S.C. § 1983. This leaves numerous individual Defendants. Though named in both their individual and official capacities, Dr. Erbacher does not allege in the substance of his Complaint that the individual Defendants involved with his tenure review process were acting at any time outside their official capacities. Consequently, these individual defendants acting in their official capacity are also not "persons" within the meaning of 42 U.S.C. §1983. *Howlett*, 496 U.S. at 365; *see also Harris v. Champion*, 51 F.3d 901, 906 (10th Cir. 1995) ("[A] state official who acts in his or her official capacity, is [not] a "person" within the meaning of § 1983.").

Regardless of the relief sought or added, the entity defendant never becomes a "person" for purposes of 42 U.S.C. §1983. Without adding injunctive relief to his complaint, Dr. Erbacher cannot bring the individual defendants within the scope of liability under 42 U.S.C. §1983. For these alternative reasons Dr. Erbacher's claims are legally deficient and must be dismissed.

    **B.**     **Motions to Amend**

Dr. Erbacher seeks leave to amend his Complaint. Under Federal Rule of Civil Procedure 15(a) a party may seek leave to amend a complaint before trial and the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). But "[a] district court may refuse to allow amendment if it would be futile." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007)

(citations omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* Allowing Dr. Erbacher to add a claim for injunctive relief and allege facts relating to use of the Barclay legal memorandum will do nothing to cure Dr. Erbacher's failure to locate a property interest in tenure protected by the Fourteenth Amendment. As such, amendment remains futile, and the court declines to permit Dr. Erbacher to amend.

## IV. Contract Claims

Having dismissed Dr. Erbacher's claims under 42 U.S.C. § 1983 the court lacks jurisdiction over the remaining causes of action: claims under Utah law for breach of contract and breach of the covenant of implied good faith and fair dealing. The court does not have federal question jurisdiction and the parties are not diverse. Furthermore, the court may not exercise pendant jurisdiction over state law claims when the federal claims are "insubstantial." *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). "Certainly if the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Indeed, both parties stipulated at oral argument that, should the claims under 42 U.S.C. §1983 fail, the court would lack jurisdiction to entertain the pending state law claims. Accordingly, the state law contract claims are dismissed for lack of jurisdiction.

## V. Conclusion

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Dkt. No. 30) Dr. Erbacher's first and second causes of action is GRANTED. The court DISMISSES Dr. Erbacher's two causes of action under 42 U.S.C. § 1983 with prejudice. The court subsequently finds it lacks jurisdiction to adjudicate the state contract claims. The court DISMISSES the third

and fourth causes of action without prejudice. Finding amendment to be futile, Dr. Erbacher's Motions to Amend (Dkt. Nos. 46, 52) are DENIED. The remaining motions are terminated as moot. (Dkt. Nos. 53, 57, 59). The Clerk of the Court is directed to close the case.

    SO ORDERED this 17th day of June, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge
